IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

GILBERT P. HYATT,          )
                           )
          Plaintiff,       )
                           )
v.                         )      Civil Action No. 1:13-cv-1535
                           )
UNITED STATES PATENT AND   )
TRADEMARK OFFICE, et al.,  )
                           )
          Defendants.      )
                           )

MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' Motion to Dismiss or Cross-Motion for Summary Judgment in opposition to Plaintiff Gilbert P. Hyatt's Motion for Summary Judgment.

Plaintiff is the named inventor of at least 75 issued patents and at least 399 pending patent applications that were filed on or before June 8, 1995. His pending applications contain an average of 116 independent claims and 299 total claims – among the largest claims sets ever encountered by the United States Patent and Trademark Office ("USPTO"). In addition, each of the 399 pending applications purportedly incorporates by reference and claims the benefit of priority to numerous earlier-filed applications often dating back into the early 1970s. Many of the pending applications not only claim priority to a web of overlapping, earlier-filed applications,

but are also themselves "parents" for the overlapping priority claims of numerous other later-filed applications.  For example, no fewer than 112 applications claim priority to patent application number 05/849,812 ("the '812 application"), while the 812 application itself claims priority to each of 20 applications.

The size, volume, and interconnectedness of Plaintiff's applications complicated their examination by the USPTO and contributed to examination delays.  In addition, the examination of many or most of Plaintiff's applications was formally stayed during the pendency of multiple proceedings before the Board of Patent Appeals and Interferences as well as civil lawsuits brought by Plaintiff against the USPTO, the outcome of which affected the examination of many of his pending applications.

Following the United States Supreme Court's decision in Hyatt v. Kappos, 132 S. Ct. 1690 (2012), the USPTO dedicated additional resources to examining Plaintiff's pending applications.  The USPTO determined that among Plaintiff's 399 pending applications, there exist only 12 roughly-distinct specifications.  The agency accordingly grouped the applications into 12 "families" corresponding to a common specification.  Cumulatively, the USPTO estimates that among the 399 pending applications, there are 45,000 pending independent claims and 115,000 total claims directed to the 12 distinct specifications.

Beginning in August 2013, the USPTO began issuing a series of formal Requirements to the applications in 11 of the 12 families, or to 385 total applications.  A single Requirement applies to each application within a given family; accordingly, each Requirement has been copied into the application file of every application to which it applies.  Each Requirement relies upon 35 U.S.C. § 131 and 37 C.F.R. §§ 1.75(b), 1.105(a), which provide, respectively: (1) that the USPTO "shall cause an examination to be made" of all patent applications; (2) that a single application may present more than one claim, "provided they differ substantially from each other and are not unduly multiplied;" and (3) that "in the course of examining or treating a matter in a pending . . . application . . . the examiner or other Office employee may require the submission . . . of such information as may be reasonably necessary to properly examine or treat the matter . . . ."

Though highly specific to the facts of the family to which it applies, each Requirement generally makes three demands of Plaintiff: (1) that he select a reasonable number of claims across the entire family, not to exceed 600 claims total per family, for examination (though he may explain why he believes he needs more if necessary); (2) that for each claim he selects, Plaintiff identify the earliest applicable priority date and

supporting disclosure; and (3) that he present a copy of the
pending claims in accordance with current practice.

Plaintiff filed numerous petitions in each family subjected
to the Requirements.  He requested that the USPTO either expunge
or redact from the Requirements information that he believes
must remain confidential under 35 U.S.C. § 122(a).  The statute
provides that:

> applications for patents shall be kept in
> confidence by the Patent and Trademark
> Office and no information concerning the
> same given without authority of the
> applicant or owner unless necessary to carry
> out the provisions of an Act of Congress or
> in such special circumstances as may be
> determined by the Director.

On November 5, 2013, the USPTO issued the Order from which
Plaintiff appeals here, concluding that § 122(a) does not
constitute a legal bar to the introduction of the information
sought in the Requirements from a first application into a
second, related, application.  The Order found that both
statutory exceptions to § 122(a)'s disclosure prohibition - that
disclosure of the information is necessary to carry out an Act
of Congress, and, that the Director has determined special
circumstances exist to warrant the disclosure - were implicated
here.  Given the complexity, volume, and interconnectedness of
Plaintiff's patent applications, the Order reasoned that the
special procedures set forth by the Requirements are necessary

for the USPTO to effectively examine the applications and create an adequate public record. As such, the Order found, "the fact that a Requirement might become available to the public as part of an application's prosecution history can also be said to have been required by an Act of Congress . . . ." Alternatively, the Order stated that "the number of related applications filed, the number of claims filed, and the number of applications to which benefit of priority is claimed" provided sufficiently-special circumstances for the USPTO to invoke that exception as well. The Order quelled concerns over the disclosure of trade secrets, reasoning that such a disclosure would not be implicated by any publications following the Requirements because the information in the Requirements would not become public until the specification to which the Requirement applies - the portion that would contain any trade secret - becomes public. Plaintiff filed this action in response, challenging the USPTO's application of § 122(a) and seeking both declaratory and injunctive relief to prevent the publication of the information within the Requirements that he asserts to be confidential.

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject-matter jurisdiction, or for summary judgment pursuant to Fed. R. Civ. P. 56(c). Defendants contend that Plaintiff has failed in his burden to prove subject-matter jurisdiction because § 122(a)'s disclosure

determinations are "committed to agency discretion by law" and thus judicially unreviewable pursuant to the Administrative Procedure Act ("APA").  See 5 U.S.C. § 701(a)(2); cf. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").  Alternatively, if a judicially manageable standard of review exists, Defendants move for summary judgment on the ground that there is no genuine issue of material fact within the Administrative Record and the relevant legal questions presented by the suit result in judgment for the Defendants as both § 122(a) exceptions apply here.  See Fed. R. Civ. P. 56(a); Wyeth v. Kappos, 591 F.3d 1364, 1369 (Fed. Cir. 2010).

"Before review may be had under the APA, 'a party must first clear the hurdle of [5 U.S.C.] § 701(a),'" which governs when courts may review agency action.  Almond Bros. Lumber Co. v. United States, 721 F.3d 1320, 1326 (Fed. Cir. 2013) (quoting Heckler v. Chaney, 470 U.S. 821, 828 (1985)).  When a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," see id. at 830, the statute is "thereby insulated from judicial review," see Hinck v. United States, 550 U.S. 501, 504 (2007).  As "there is no law to apply" without a meaningful standard of judicial review, the jusiticability of Plaintiff's claim must be

established at the threshold.  See Inova Alexandria Hosp. v. Shalala, 244 F.3d 342, 346 (4th Cir. 2001) (quotations and citations omitted).

Plaintiff here is challenging the USPTO Director's application of 35 U.S.C. § 122(a), which provides that patent applications filed prior to November 28, 2000 remain confidential during their pendency "unless necessary to carry out the provisions of an Act of Congress or in such special circumstances as may be determined by the Director."  Id.  He seeks judicial review of the "necessity" and "special circumstances" the Director's Order invoked to justify disclosure.

Plaintiff fails to identify what judicially manageable standard of review exists to assess the Director's determination of "necessity" or "special circumstances" – failing to provide the Court with a basis for subject-matter jurisdiction. Plaintiff attempts to rely on Sears v. Gottschalk, 502 F.2d 122 (4th Cir. 1974), where the Court determined whether § 122 fell within a Freedom of Information Act ("FOIA") exemption allowing agencies to withhold any information "specifically exempted from disclosure by statute."  See id. at 126 (quotations omitted). The Court found that § 122 satisfied the FOIA exemption because "the phrase 'applications for patents' [within § 122] sufficiently identifies the class of items Congress deems

appropriate[.]" See id. at 127. The Court so found while acknowledging that this phrase's specificity ensured "that the absence of guidelines in § 122 for the exercise of the Commissioner's discretion would not be determinative." See id. (emphasis added). Yet here the Plaintiff does not argue that the mere identification of "applications for patents" as § 122's subject matter provides a meaningful standard for judicial review of the Director's disclosure discretion, nor does he provide another such guideline.

§ 122(a)'s language is very similar to that which courts have found unreviewable under § 701(a)(2). In Webster v. Doe, the Supreme Court found that the National Security Act provision permitting the CIA Director to terminate an employee whenever the Director "shall deem [it] necessary or advisable" precludes judicial review. See 486 U.S. 592, 600 (1988) (quotations omitted) (emphasis added). The Court noted the distinction between a termination following the Director deeming it "necessary or advisable" and termination "simply when [it] is necessary or advisable." See id. (emphasis in original). The former language exudes discretion, as does the language in § 122(a).

As noted supra, § 122(a) does not merely authorize the USPTO to publish applications when special circumstances are present, but rather in those "special circumstances as may be

determined by the Director." Id. (emphasis added). Such language hinges on the findings and conclusions of the Director and "foreclose[s] the application of any meaningful judicial standard of review." See Webster, 486 U.S. at 600.

Additionally, the term "special circumstances" – without any appurtenant definition – is a "large or loose statutory term[]," see Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 318 (1958), and such terms are preclusive of judicial review. Plaintiff contends that the USPTO's relevant implementing regulations enumerate certain categories of "special circumstances," and that is true. See 37 C.F.R. § 1.14. While § 1.14 does provide some instances of "special circumstances," it does not, by its own terms, provide the universe. See id. at § 1.14(i) (noting that USPTO retains the discretion to determine "other special circumstances" warranting disclosure). Those instances cannot be conflated with a definition of "special circumstances" provided in statute, regulation, or case-law. § 122(a)'s use of "permissive and discretionary language" towards the Director as well as its lack of confinement in regulation "further supports the inference that the agency action is unreviewable." See Tamenut v. Mukasey, 521 F.3d 1000, 1004 (8th Cir. 2008) (en banc) (finding no judicially manageable standard of review allowing the Board of Immigration Appeals to reopen an appeal in an "exceptional situation").

Nothing in § 122(a) requires the Director to create an evidentiary record or make particular factual findings – the Director merely makes a determination that disclosure is either necessary to carry out a congressional act or that the circumstances at issue are sufficiently special to warrant it. This does not provide the basis for "arbitrary and capricious" review, where a court must consider whether the agency decision "was based on a <u>consideration of the relevant factors</u> and whether there has been a clear error of judgment," see <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971) (emphasis added), or "substantial evidence" review, where the court must have a basis to determine "such relevant evidence" that might be "accept[ed] as adequate to support a conclusion," see <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). Without any standard to weigh the Director's determinations against, the Court is left without a law to apply and judicial review could result in contravening the statute. Finding the "necessity" determination reviewable would imply that the Director failing to make a disclosure would also be subject to judicial review – "[t]hat would put the federal courts in the position of possibly requiring that the [Director] issue an order that he determined was not necessary to effectuate [an Act of Congress]." See <u>Suntex Dairy v. Block</u>, 666 F.2d 158, 165 (5th Cir. 1982). Moreover, judicial review of

the Director's "special circumstances" determination would imply that special circumstances could exist that would not be determined by the Director, despite § 122(a) leaving such a finding expressly to his determination.  "[T]he Act does not envisage" such outcomes.  Cf. Suntex Dairy, 666 F.2d at 165.

Even if § 122(a) were to provide a meaningful standard for judicial review, it does not prohibit the disclosure of the information that Plaintiff seeks to protect.

As explained supra, § 122(a) expressly allows for the disclosure of otherwise confidential information where such disclosure is "necessary to carry out the provisions of an Act of Congress."  Id.  § 131 of the Patent Act, in turn, provides that the USPTO "Director shall cause an examination to be made" of all properly filed patent applications.  See 35 U.S.C. § 131. Accordingly, the Director's November 5, 2013 Order explained that

> [b]ecause the information has been included in the Requirements in order to carry out the provisions of an Act of Congress (35 U.S.C. § 131), the fact that a Requirement might become available to the public as part of an application's prosecution history can also be said to have been required by an Act of Congress . . . . As in the case of double-patenting, any right to confidentiality that [Plaintiff] has in the information contained in the examination Requirement must give way to the necessities of patent examination.

Plaintiff characterizes the Order as making the Requirements
their own rationale for the Director's necessity determination,
but this fails to appreciate the need for the USPTO to
effectively examine the applications and create an adequate
public record. As explained within the '812 Requirement:

> It is not feasible for the examiners to
> maintain a simultaneous mental picture of
> the roughly 120 independent claims in any
> given application, much less the 2,160
> independent claims across this family's 18
> applications, which share a common
> specification. Further, attempting to hold
> in mind the delineation created by the
> 45,000 independent and 115,000 total claims
> across all 399 applications in the extended
> family is simply impossible. While any two
> claims can be compared and a difference
> identified, the repetition of similar
> elements across a vast number of claims
> prevents the examiner from forming an
> understanding of an overall picture of the
> claimed invention(s). This results in
> inefficient examination of the claims in
> isolation, makes identification of a
> consistent line of patentability impractical
> and requires impracticable further effort to
> ensure consistency within a single action
> for little apparent benefit. It also leads
> to a situation where the examiner is
> spending much of his time comparing
> applicant's claims to each other to identify
> the differences instead of comparing
> applicant's claims, and the related
> specification, to the prior art.

What is more, Plaintiff's sought relief does not contend with
the implementing regulations that explain what will be made
public and when.

A Requirement will be made public either when any of
Plaintiff's currently-pending applications issues as a patent,
as "all papers" in the application file - including the
Requirement for that particular patent - will be disclosed
pursuant to 37 C.F.R. § 1.11(a).  A Requirement will also be
made public to the extent that any of Plaintiff's pending
applications are claimed as a "parent" to an issued "child"
patent (a patent application that claims the filing date of its
"parent," the earlier-filed and related application).  This is
pursuant to 37 C.F.R. § 1.14(a)(1)(v), providing that the entire
"file contents" of that parent application - including the
Requirement issued in the parent application - are made publicly
available.  Currently, five of Plaintiff's pending application
files are public pursuant to § 1.14(a)(1)(v), and others will
become public if a related "child" application issues a patent.

Plaintiff finds no argument with these regulations and
cannot point to any authority allowing him to seek the redaction
or expunging of files that are or will be lawfully public.
While he is not challenging the validity of these disclosure
rules, the remedy he seeks would frustrate their ability to
provide the public a basis to determine his patents' precise
boundaries - both now and when new ones are issued.  Cf. J.E.M.
Ag Supply, Inc., v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124,
142 (2001) (noting that the full public disclosure of all papers

relating to a patent file is "the quid pro quo of the right to exclude" granted by a patent) (quoting Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 484 (1974)); Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 157 (1989) (recognizing the public disclosure rule as the "centerpiece of federal patent policy"). § 131 of the Patent Act requires a patent examination, and the USPTO must accordingly find a feasible way to examine Plaintiff's voluminous and interconnected applications.  As the publications Plaintiff seeks to stop will occur by normal operation of the same disclosure rules that apply to all other inventors, Plaintiff cannot seek to craft different disclosure rules through this action.

Finally, there is no genuine factual dispute over the USPTO's determination that the nature and prosecution history of Plaintiff's patent applications constitute "special circumstances" warranting publication.  The Order cited several factors that cumulatively warrant disclosure:  the number of interrelated applications; the large number of claims within each application; the priority claims webbed across applications; that the publications would not cause the harm guarded against by § 122(a); and Plaintiff's own prosecution practice.  The Administrative Record confirms that the circumstances of Plaintiff's patent applications and his prosecution history are extraordinary.  As noted supra,

Plaintiff has 399 pending applications including an average of
116 independent claims and 299 total claims.  The size of
Plaintiff's patent applications and claims makes no mention of
the extent of their interconnectedness and complexities.
Plaintiff aims to draw a distinction between extraordinary
circumstances and "special circumstances," but he provides no
judicially manageable standard to explain why the Director
cannot determine that extraordinary circumstances constitute
"special circumstances" under § 122(a).

     Plaintiff mistakenly argues against the Director's "special
circumstances" finding because he believes that disclosure will
not reduce his applications or claims.  This grafts a
requirement on to § 122(a) - the statute does not require
disclosure to remedy the "special circumstances" that warrant
it.  The statute only requires that the Director determine such
circumstances exist.  What is more, the USPTO did not issue the
Requirements in order to disclose information about Plaintiff's
applications.  The Requirements arose to compel Plaintiff's
cooperation in organizing the claims among his applications.
After the Plaintiff challenged the publication of certain
information - a necessary result of 37 C.F.R. § 1.14(a)(1)(v) -
the USPTO determined that many of the same circumstances
necessitating the Requirements also justified any publication
that would result from them.  The Director acted within his

discretion to determine that these circumstances are sufficiently special to warrant disclosure.

As noted supra, the Order noted that a Requirement's information "will not become public until a specification to which the Requirement[] appl[ies] becomes public, thereby negating any concern about the [premature] release of trade secrets." Accordingly, these disclosures are not likely to cause the harm guarded against in § 122(a).

An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
May 2⸱9 , 2014